IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SSAC ACQUISITION CORP.,                          )
                                                 )
                    Plaintiff,                   )
                                                 )
        v.                                       )        C.A. No. _____
                                                 )
SINO SWEARINGEN AIRCRAFT CORPORATION,            )
EMIRATES GLOBAL CAPITAL (US), LLC, and           )
ACTION AVIATION INVESTORS, LLC                   )        JURY TRIAL DEMANDED
                                                 )
                    Defendants.                  )

## COMPLAINT

For its complaint against Sino Swearingen Aircraft Corporation ("SSAC"), Emirates

Global Capital (US), LLC ("Emirates Global"), and Action Aviation Investors, LLC. ("Action

Aviation"), SSAC Acquisition Corp. ("SSAC Acquisition") states as follows:

## THE PARTIES

1.      SSAC Acquisition is an Ohio corporation with its principal place of business in

Fort Lee, New Jersey.

2.      SSAC is a Delaware corporation with its principal place of business in San

Antonio, Texas.

3.      Emirates Global is a Delaware limited liability company. Upon information and

belief, its principal place of business is in Dubai, United Arab Emirates.

4.      Action Aviation is a Delaware limited liability company. Upon information and

belief, its principal place of business is in London, England.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because there is complete diversity and the amount in controversy exceeds $75,000.

6.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because, among other reasons, all defendants reside in Delaware and in this judicial district.

## BACKGROUND

### *PRELIMINARY NEGOTIATIONS FOR SSAC'S ACQUISITION*

7.    SSAC is a company that develops and manufactures jet aircraft.

8.    In early 2007, SSAC and Robert H. Book ("Mr. Book"), a New York resident, entered into preliminary discussions to explore the possibility of acquiring SSAC along with a group of investors led by Mr. Book.

9.    In April, 2007, Mr. Book and a group of his investors formed SSAC Acquisition for the purpose of acquiring control of SSAC through either a stock or asset purchase.

10.    SSAC and SSAC Acquisition essentially agreed upon terms for an acquisition in April, 2007, but then SSAC informed SSAC Acquisition that it was going to instead shop the deal on the open market.

11.    As a result of that disclosure, SSAC Acquisition removed itself from further negotiations, making it clear that it would only negotiate on an exclusive basis. Mr. Book also informed SSAC that it should assure itself that any prospective purchaser establish its financial wherewithal to avoid wasting valuable time in negotiations with a party that might be unable to fund an acquisition.

2

12.    At approximately the same time, Action Aviation, in conjunction with the investment group ACQ Capital, also expressed a desire to purchase SSAC, and entered into negotiations with SSAC.

13.    Action Aviation is a joint venture between Action Aviation Ltd., SSAC's largest distributor, and ACQ Capital.

14.    Action Aviation, in partnership with ACQ Capital, was formed for the purpose of acquiring SSAC.

15.    SSAC and Action Aviation, in partnership with ACQ Capital, reached an agreement under which Action Aviation would acquire a controlling interest in SSAC with closing to take place on or before November 19, 2007.

16.    Action Aviation and ACQ Capital were ultimately unable to fund the transaction, and therefore were unable to close.

17.    Thereafter, Action Aviation sought in November to have Emirates Global step into Action Aviation' shoes as SSAC's purchaser, and Emirates Global and Action Aviation entered into preliminary discussions with SSAC toward that end.  SSAC and Emirates Global were unable to agree upon terms for the acquisition.

18.    Also in November, and after six months of SSAC publicly claiming that a purchaser's funds were in place and that the transaction would close, SSAC Chairman & CEO Chang-Feng Lo ("Max Lo") re-initiated contact with SSAC Acquisition and asked it to renew negotiations because SSAC's financial condition had deteriorated to such an extent that its survival depended upon an immediate cash infusion.

RLF1-3238053-1

19.    In fact, SSAC later acknowledged that it wasted over six months in failed discussions with Action Aviation, and its partner ACQ Capital, and that the only way to prevent SSAC's bankruptcy was for SSAC Acquisition to immediately undertake accelerated negotiations that would have to be completed in an extremely compressed time frame, leading to a closing in mid-December 2007.

20.    SSAC's financial condition had deteriorated to the point that it told SSAC Acquisition that SSAC had only two options going forward: bankruptcy, with all of its negative connotations, or a deal with SSAC Acquisition.

21.    In view of those two options, on November 26, 2007, SSAC Acquisition informed Max Lo that Mr. Book would be meeting with various SSAC Acquisition principals the following day and that it was an ideal time to renew discussions concerning the SSAC acquisition. (*See* November 26, 2007 email from Mr. Book to Max Lo, a true and accurate copy of which is attached as Exhibit 1, and incorporated herein).

22.    As had been the case in the spring of 2007, SSAC Acquisition advised SSAC that it would only negotiate on an exclusive basis. Mr. Book expressed SSAC Acquisition's concern that SSAC was negotiating with other potential SSAC acquirers. Mr. Book requested that Max Lo inform him of SSAC's negotiation status with those parties, as it had previously done in the spring of 2007. Id.

23.    SSAC Acquisition demanded exclusivity because it was concerned that SSAC would again shop its proposal to others, seeking a better deal at SSAC Acquisition's expense. Accordingly, SSAC Acquisition sought to ensure that any further discussions would be exclusive

4

between it and SSAC before it spent the time, effort, resources, and credibility associated with continued due diligence and negotiations.

24.    That exclusivity concern was heightened when, three days later, SSAC Acquisition received a copy of a draft stock purchase agreement and term sheet detailing the terms of Emirates Global's potential acquisition of SSAC.

25.    SSAC Acquisition received that draft term sheet and stock purchase agreement as an attachment to a November 29, 2007 email from George Fung ("Fung"), an SSAC authorized representative, which also included a proposed schedule for SSAC Acquisition's acquisition of SSAC. (*See* November 29, 2007 email from Fung to Mr. Book and proposed acquisition schedule, a true and accurate copy of which is attached as Exhibit 2, and incorporated herein).

26.    In response to SSAC Acquisition's exclusivity demand, Fung sent SSAC Acquisition a copy of two emails purporting to terminate negotiations with both Emirates Global and Action Aviation (the "Termination Emails") (*See* November 29, 2007 email from Fung to Mr. Book, a true and accurate copy of which is attached as Exhibit 3, and incorporated herein).

27.    On November 20, 2007, an SSAC representative sent the first Termination Email to an Action Aviation representative, informing Action Aviation that the parties' previous agreement had "terminated," was of "no further force and effect," and SSAC "has indicated that it will not proceed with a transaction with Action Aviation Investors, LLC." (*See* November 20, 2007 email from Steven Buxbaum, attorney for SSAC, to John Sabovich, a principal of ACQ Capital, a true and accurate copy of which is attached as Exhibit 4, and incorporated herein).

28.    On November 29, 2007, Max Lo sent SSAC's second Termination Email to Howard Leedham of Emirates Global. That email stated that SSAC "will have to decline

5

[Emirates Global's] offer on this SSAC transaction, unless our communications can be based on the proposed Stock Purchase Agreement." (*See* November 29, 2007 email from Max Lo to Howard Leedham, a true and accurate copy of which is attached as Exhibit 5, and incorporated herein).

## *SSAC AGREES TO TERMINATE NEGOTIATIONS WITH OTHER PROSPECTIVE BUYERS AND AGREES TO NEGOTIATE EXCLUSIVELY WITH SSAC ACQUISITION*

29.     After receiving the Termination Emails on November 29, 2007, Mr. Book, on behalf of SSAC Acquisition, sent an email to Max Lo pointing out the equivocal nature of SSAC's Termination Email to Emirates Global, describing it as "not a Termination Letter, but a letter in which [SSAC] seek[s] a concession and a further response." (*See* November 29, 2007 email from Mr. Book to Max Lo, a true and accurate copy of which is attached as Exhibit 6, and incorporated herein).

30.     Mr. Book's email further stated that "you are still negotiating with [Emirates Global]. I will not have our legal team work this weekend, nor will I submit a term sheet today until you send a valid Termination Letter to Mr. Leedham. **We are only prepared to proceed on an exclusive basis**." Id.

31.     On that same day, in a reply to Mr. Book's email, Fung consented to SSAC Acquisition's demand for exclusivity and stated that SSAC would send another letter to Emirates Global formally terminating negotiations for SSAC's acquisition. Id.

32.     Later that day, Marshall Kusomoto, on behalf of Max Lo and SSAC, emailed Howard Leedham of Emirates Global stating "[p]lease find the attached letter terminating" the negotiations and relationship with Emirates Global (the "Termination Letter") in acknowledgement of its agreement to negotiate exclusively with SSAC Acquisition. (*See*

6

November 29, 2007[1] email and Termination Letter, a true and accurate copy of which is attached as Exhibit 7, and incorporated herein).

33. The Termination Letter informed Emirates Global that SSAC had terminated negotiations with it and all related entities and instructed Emirates Global to destroy all confidential information provided by SSAC. Id.

34. By acting in accordance with SSAC Acquisition's demand to terminate discussions with Emirates Global and in conversations with Mr. Book taking place on or about November 29, 2007, SSAC through its agents, including Max Lo, agreed to negotiate exclusively with SSAC Acquisition on a going forward basis, except that SSAC reserved the right to enter bankruptcy proceedings as the only other alternative if the parties failed to reach agreement on the terms of its acquisition by SSAC Acquisition (collectively with the acts of acceptance described above, the "Exclusivity Agreement").

35. After the Exclusivity Agreement was reached, on November 29, 2007, SSAC Acquisition sent an email to Max Lo scheduling a conference call for that night and attaching a revised proposed negotiation schedule under which the acquisition's closing would take place no later than January 8, 2008. (See November 29, 2007 email from Mr. Book to Max Lo and attached schedule, a true and accurate copy of which is attached as Exhibit 8, and incorporated herein).

36. On that conference call, SSAC once again confirmed the Exclusivity Agreement.

---

[1] Some SSAC emails were sent from Taiwan. Due to the difference in time zones, they may reflect a date which is actually one day prior to the U.S. date in which SSAC Acquisition would have received such emails.

### *SSAC ACQUISITION EXECUTES A LETTER OF INTENT TO ACQUIRE SSAC AND THE PARTIES WORK TOWARDS FINALIZING THE ACQUISITION*

37.    In reliance on the Exclusivity Agreement, SSAC Acquisition incurred considerable expense analyzing the prospects of an SSAC acquisition, placed its credibility on the line with its investors and lenders, and then executed and sent a letter of intent (the "Letter of Intent") to purchase SSAC stock.

38.    Also on November 30, 2007, Mr. Book emailed Max Lo thanking SSAC for its "timely and decisive" response to SSAC Acquisition's concerns regarding the deficiencies in SSAC's initial Termination Email to Emirates Global, and the corrective actions which resulted in the Exclusivity Agreement.

39.    That email further advised SSAC that the SSAC Acquisition team "will be working on this all weekend to accommodate the timeline." (*See* November 30, 2007 email from Mr. Book to Max Lo, a true and accurate copy of which is attached as Exhibit 9, and incorporated herein).

40.    Over the next several days, SSAC Acquisition devoted a great amount of time and incurred significant expense to finalize the terms of the acquisition.

### *SSAC VIOLATES THE EXCLUSIVITY AGREEMENT BY NEGOTIATING WITH EMIRATES GLOBAL AND ACTION AVIATION AND UNILATERALLY TERMINATES NEGOTIATIONS WITH SSAC ACQUISITION*

41.    By  early December, 2007, SSAC had inexplicably ceased all communications with SSAC Acquisition.

42.    On December 10, 2007, Mr. Book sent Max Lo an email relaying SSAC Acquisition's disappointment in SSAC's failure to communicate. (*See* December 10, 2007 email

8

from Mr. Book to Max Lo, a true and accurate copy of which is attached as Exhibit 10, and incorporated herein).

43.     Upon information and belief, by at least early December, 2007, SSAC and Max Lo were concealing the secret negotiations with Action Aviation and Emirates Global, unlike the honest disclosure it had made in the Spring of 2007, which had caused SSAC Acquisition to terminate non-exclusive discussions.

44.     On December 18, 2007, SSAC finally responded to SSAC Acquisition through a letter indicating that the SSAC Board had decided not to accept SSAC Acquisition's Letter of Intent. (See December 18, 2007 letter from SSAC to SSAC Acquisition, a true and accurate copy of which is attached as Exhibit 11, and incorporated herein).

45.     Upon information and belief, SSAC's abrupt discontinuance of communications with SSAC Acquisition was because, notwithstanding its obligations under the Exclusivity Agreement, Action Aviation interceded and persuaded SSAC that it should renew negotiations with Emirates Global.

46.     Upon information and belief, Emirates Global and Action Aviation knew of the Exclusivity Agreement between SSAC and SSAC Acquisition and nevertheless interfered with it and induced SSAC to breach it.

47.     Upon information and belief, Action Aviation and/or its members have been promised a financial interest in the Emirates Global acquisition of SSAC, via an ownership interest in SSAC and/or a brokerage fee payment from Emirates Global.

48.     On December 18, 2007, SSAC Acquisition wrote a letter to Emirates Global confirming the existence of the Exclusivity Agreement and demanding that it cease negotiations

9

with SSAC or, if an agreement between the two had already been reached, refrain from moving forward with closing the transaction. (*See* December 18, 2007 letter from William C. Wilkinson to Emirates Global, a true and accurate copy of which is attached as Exhibit 12, and incorporated herein). Emirates Global has acknowledged receipt of that letter but, as of this date, has failed to substantively respond to it.

49.    Upon information and belief, SSAC and Emirates Global intend to close a sale of SSAC to Emirates Global in mid-January, 2008 in violation of the Exclusivity Agreement and in violation of SSAC Acquisition's rights under that agreement.

## COUNT I – BREACH OF CONTRACT AGAINST SSAC

50.    SSAC Acquisition restates the preceding paragraphs of this Complaint as if fully rewritten herein.

51.    Under the Exclusivity Agreement, SSAC agreed to exclusively negotiate acquisition terms with SSAC Acquisition and to keep the terms of any SSAC offer confidential.

52.    SSAC Acquisition performed all of its obligations under the Exclusivity Agreement by negotiating with SSAC and its representatives in good faith.

53.    SSAC breached the Exclusivity Agreement by disclosing the confidential terms of SSAC Acquisition's offer and negotiating its acquisition with Emirates Global.

54.    As a proximate result of SSAC's breach of contract, SSAC Acquisition has been damaged in an amount to be proven at trial.

## COUNT II – PROMISSORY ESTOPPEL AGAINST SSAC

55.    SSAC Acquisition restates the preceding paragraphs of this Complaint as if fully rewritten herein.

RLF1-3238053-1

56.    SSAC agreed to exclusively negotiate acquisition terms with SSAC Acquisition.

57.    It was reasonably foreseeable to SSAC that SSAC Acquisition would rely on SSAC's material promise to SSAC Acquisition's detriment.

58.    SSAC Acquisition in fact relied on SSAC's promise to its detriment and is therefore damaged by SSAC's failure to comply with its promise.

59.    As a direct and proximate result of SSAC Acquisition's reliance upon SSAC's promise, SSAC Acquisition has been damaged in an amount to be proven at trial, and it would be unjust for SSAC Acquisition to not be compensated for those losses.

## COUNT III – UNJUST ENRICHMENT AGAINST SSAC

60.    SSAC Acquisition restates the preceding paragraphs of this Complaint as if fully rewritten herein.

61.    SSAC has been unjustly enriched by revealing confidential the terms of SSAC Acquisition's offer and then negotiating an acquisition by Emirates Global containing different and more beneficial terms than those offered by SSAC Acquisition, all in violation of the Exclusivity Agreement.

62.    SSAC's unjust enrichment was at SSAC Acquisition's expense.

63.    Circumstances are such that equity and good conscience require SSAC to disgorge its ill-gotten benefits to SSAC Acquisition, all obtained in violation of the Exclusivity Agreement.

## COUNT IV – PROMISSORY FRAUD AGAINST SSAC

64.    SSAC Acquisition restates the preceding paragraphs of this Complaint as if fully rewritten herein.

65.    SSAC entered into an Exclusivity Agreement with SSAC Acquisition and otherwise promised that there would be exclusive negotiations between SSAC and SSAC Acquisition (the "Exclusivity Promises").

66.    At the time SSAC made the Exclusivity Promises, it had no present intention of performing them.

67.    The Exclusivity Promises were mutual.

68.    SSAC intended to induce SSAC Acquisition into acting on the Exclusivity Promises by expending legal and due diligence resources.

69.    SSAC Acquisition has actually and justifiably relied on SSAC's Exclusivity Promises by expending legal and due diligence resources.

70.    As a direct and proximate result of SSAC's promissory fraud, SSAC Acquisition has been damaged in an amount to be proven at trial.

## COUNT V – TORTIOUS INTERFERENCE WITH CONTRACT AGAINST EMIRATES GLOBAL AND ACTION AVIATION

71.    SSAC Acquisition restates the preceding paragraphs of this Complaint as if fully rewritten herein.

72.    SSAC and SSAC Acquisition entered into the Exclusivity Agreement.

73.    Emirates Global and Action Aviation knew about the Exclusivity Agreement and, without privilege, legal justification, or excuse, willfully and intentionally interfered with the Exclusivity Agreement and induced its breach by negotiating the acquisition of SSAC.

74.    As a direct and proximate result of Emirates Global and Action Aviation's willful and intentional interference with the Exclusivity Agreement, SSAC Acquisition has been damaged in an amount to be proven at trial.

12

## COUNT VI – TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS AGAINST EMIRATES GLOBAL AND ACTION AVIATION

75.    SSAC Acquisition restates the preceding paragraphs of this Complaint as if fully rewritten herein.

76.    There is a reasonable probability that SSAC Acquisition would have acquired SSAC.

77.    Emirates Global and Action Aviation knew about that reasonable probability and, without privilege, legal justification, or excuse, willfully and intentionally interfered with that probability by negotiating the acquisition of SSAC.

78.    As a direct and proximate result of Emirates Global and Action Aviation's willful and intentional interference with SSAC's prospective business relations, SSAC Acquisition has been damaged in an amount to be proven at trial.

## COUNT VII – NEGLIGENT INTERFERENCE WITH CONTRACT AGAINST EMIRATES GLOBAL AND ACTION AVIATION

79.    SSAC Acquisition restates the preceding paragraphs of this Complaint as if fully rewritten herein.

80.    SSAC and SSAC Acquisition entered into the Exclusivity Agreement.

81.    Emirates Global and Action Aviation knew or should have known about the Exclusivity Agreement and, without privilege, legal justification, or excuse, negligently interfered with the Exclusivity Agreement by negotiating the acquisition of SSAC.

82.    As a direct and proximate result of Emirates Global and Action Aviation's negligent interference with the Exclusivity Agreement, SSAC Acquisition has been damaged in an amount to be proven at trial.

## COUNT VIII – NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS AGAINST EMIRATES GLOBAL AND ACTION AVIATION

83.     SSAC Acquisition restates the preceding paragraphs of this Complaint as if fully rewritten herein.

84.     There is a reasonable probability that SSAC Acquisition would have acquired SSAC.

85.     Emirates Global and Action Aviation knew or should have known about that reasonable probability and, without privilege, legal justification, or excuse, negligently interfered with that probability by negotiating the acquisition of SSAC.

86.     As a direct and proximate result of Emirates Global and Action Aviation's negligent interference with SSAC's prospective business relations, SSAC Acquisition has been damaged in an amount to be proven at trial.

## COUNT IX – PUNITIVE DAMAGES AGAINST SSAC, EMIRATES GLOBAL, AND ACTION AVIATION

87.     SSAC Acquisition restates the preceding paragraphs of this Complaint as if fully rewritten herein.

88.     Counts Four, Five, and Six are torts committed by SSAC, Emirates Global, and Action Aviation intentionally and with actual malice.

89.     SSAC Acquisition is entitled to an award of punitive damages in an amount sufficient to punish SSAC, Emirates Global, and Action Aviation and deter other actors from behaving in a similar manner.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all matters triable at law.

RLF1-3238053-1

## PRAYER FOR RELIEF

WHEREFORE, SSAC Acquisition demands the following relief:

A.      Compensatory damages in an amount in excess of Fifty Million Dollars

($50,000,000);

B.      Punitive damages in the amount of Two-Hundred Fifty Million Dollars ($250,000,000);

C.      Prejudgment interest;

D.      The costs of this action, including reasonable attorneys' fees; and

E.      Such other relief as this Court deems just and proper.

Stephen E. Herrmann (#691)
herrmann@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
(302) 651-7730
(302) 498-7730 (facsimile)

OF COUNSEL:
William C. Wilkinson
William.Wilkinson@Thompsonhine.com
O. Judson Scheaf, III.
Jud.Scheaf@Thompsonhine.com
THOMPSON HINE LLP
10 W. Broad St., Suite 700
Columbus, Ohio  43215
614.469.3200
614.469.3361 (facsimile)

15

# Exhibit 1

**From:** bobhbook@aol.com
**Sent:** Monday, November 26, 2007 4:52 PM
**To:** maxlo@ms.aldc.com.tw

# REDACTED

## CONFIDENTIAL

Dear Max:

As follow-up to my earlier telephone voice message, I wish to reiterate that I will be in Columbus, Ohio on Tuesday, November 27, 2007 meeting with █████████████ and our various Board members.  It is an ideal time to deal with the SSAC question, as we will all be together in person.  Therefore, it is important that you please let me know where you stand with your current "SO-CALLED" buyer and his "latest" financial backer.  You can reach me on my cell phone (201-245-9030).

Kind regards,

Bob Book

Email and AIM finally together. You've gotta check out free AOL Mail!

12/18/2007

# Exhibit 2

| | |
|---|---|
| **From:** | georgefung@ms.aidc.com.tw |
| **Sent:** | Thursday, November 29, 2007 12:39 AM |
| **To:** | BobHBook@aol.com |
| **Cc:** | maxlo@ms.aidc.com.tw; davidchou@ms.aidc.com.tw; jason |
| **Subject:** | 轉寄：SSAC Transaction |
| **Attachments:** | Negotiation Schedule_SSAC Acquisition Co._1129v.ppt; Term Sheet_1129.doc; Stock Purchase Agreement_1129.DOC |

Dear Mr. Book,

As requested by Yao Hwa that term sheet should be signed concurrently with security agreement, we have made a slight change to the schedule we sent you not long ago. We revise the first work item to add "term sheet" in it. A revised copy is attached herewith for your reference.

Along with this email, we have attached the Term Sheet and Stock Purchase Agreement with the previous investor for your review and comment. As time is of essence of this transaction, we would appreciate your kind assistance in providing your comments before this Friday so that we can work on it this weekend and hopefully meet the proposed schedule.

We look forward to your early and favorable response.

Thank you,
George Fung
T: 886-4-22842297
C: 886-937-597862

12/18/2007

# Proposed Negotiation Schedule with SSAC Acquisition Co.

| Schedule Items | Nov. | Dec. | | | | | |
|---|---|---|---|---|---|---|---|
| Term Sheet & Security Agreement Sign-off | 11/29 ▶ | 12/03 ▶ | | | | | |
| Bridge Loan ($5M) in SSAC | | 12/04 ▶ | | | | | |
| Due Diligence | | | 12/05 ▶ | 12/10 ▶ | | | |
| SPA Negotiation | | | | | 12/11 ▶ | 12/14 ▶ | |
| Equity Transfer | | | | | | 12/17 ▶ | 12/21 ▶ |

☐ Yao Hwa to expedite review of Security Agreement and Promissory Note.

☐ Documents to be notarized by attorney of SSAC Acquisition Co.

# Exhibit 3

| From: | georgefung@ms.aldc.com.tw |
|---|---|
| Sent: | Friday, November 30, 2007 5:31 AM |
| To: | bobhbook@aol.com |
| Cc: | Freiburger, Charles; Moehring, Boyd; maxlo@ms.aldc.com.tw; sonia.sun@bakernet.com; mkusumoto@sj30jet.com |
| Subject: | 轉寄：Letter to Mr. Book |
| Attachments: | TERMINATION LETTER.doc; EID_Termination.pdf |

Dear Mr. Book:

It was a pleasure talking to you today. Per our discussion over the conference call, I hereby attach for your reference copies of：

1.    A termination notice from Steven A. Buxbaum, attorney of AAI, to Mr. John Sabovich of ACQ Capital.

2.    A letter from Dr. Max Lo to Mr. Howard Leedham, representative of Emirates Investment & Development PSC, expressing our intention to terminate the negotiation of the SSAC transaction.

In addition, here are contact windows for the SSAC transaction:

SSAC: Mr. Marshall Kusumoto
Office: 210-258-3900 ext. 6025
Cell: 210-548-1555
Email: mkusumoto@sj30jet.com

Legal issue contact window for Yao Hwa:
Ms. Sonia Sun
Office: 886-2-27157397
Cell: 886-989-047-487
FAX: 886-2-2716-9250
Email: sonia.sun@bakernet.com

Ms. Victoria Lin
Office: 886-2-27157247
Email: victoria.lin@bakernet.com

Please let me know if I can be of further help.

12/18/2007

Sincerely,
George Fung

12/18/2007

# Exhibit 4

From: Buxbaum, Steven A. [mailto:Steven.Buxbaum@haynesboone.com]
Sent: Tuesday, November 20, 2007 3:55 PM
To: John Sabovich
Subject: Sino Swearingen

John, pursuant to the 14-day notice received November 4, 2007 pursuant to the Stock Purchase Agreement dated September 23, 2007, the agreement terminated automatically at the close of business yesterday and is of no further force or effect. Sino Swearingen has indicated that it will not proceed with a transaction with Action Aviation Investors, LLC.

Steven A. Buxbaum
Haynes and Boone, LLP
One Houston Center
1221 McKinney St., Suite 2100
Houston, TX 77010
Direct telephone: 713-547-2041
Direct fax: 713-236-5404
steven.buxbaum@haynesboone.com

CONFIDENTIALITY NOTICE

This electronic mail transmission is confidential, may be privileged and should be read or retained only by the intended recipient. If you have received this transmission in error, please immediately notify the sender and delete it from your system.

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message. Click here or visit www.bakernet.com/disclaimer_bm for other important information concerning this message.

# Exhibit 5

MAX LO/AIDC
寄件人:羅正方
電 話:502237
部 門:000 集團公司
2007/11/29 下午 05:16

收件人  Howard Leedham <howard@burjholding.com>
副本抄送  hharding@actionaviation.com, GEORGE
FUNG/AIDC@AIDC, mkusumoto@sj30jet.com

副本密送

收件人中文名稱

主旨  RE: SSAC - Project Sonic

Dear Mr. Leedham,

Thank you for your email dated November 28th.

Though I hate to say this, but your offer came as a great disappointment to us. We believe our requirements are fundamental, and we work hard to close this transaction with you in good faith. Yet your proposal has denied the spirit and framework of the Stock Purchase Agreement, and your request to elimitate the SSAC existing debt obliligation to Yao Hwa is totally unacceptable.

We understand Emirates Investment and Development PSC and Istithmar are successful in their business and investment, and we have no doubt that their vast network with various sectors will be instrumental to the future business development of SSAC. However, after extensive discussions with Yao Hwa and shareholders, we regret to inform you that we will have to decline your offer on this SSAC transaction, unless our communications can be based on the proposed Stock Purchase Agreement.

We look forward to hearing from you. Whatever your decision is, we would like to thank you for your interest in SSAC.

Sincerely,
Max Lo
Chairman & CEO.
SSAC

Howard Leedham <howard@burjholding.com>



Howard Leedham
<howard@burjholding.com>

寄件人:
電 話:
部 門:
2007/11/29 下午 01:58

收件人  <maxlo@ms.aidc.com.tw>
副本抄送

收件人中文名稱

主旨  SSAC - Project Sonic

# Exhibit 6

| | |
|---|---|
| **From:** | georgefung@ms.aidc.com.tw |
| **Sent:** | Friday, November 30, 2007 10:43 AM |
| **To:** | BobHBook@aol.com |
| **Cc:** | Moehring, Boyd; Freiburger, Charles; maxlo@ms.aidc.com.tw; mkusumoto@sj30jet.com; sonia.sun@bakernet.com |

**Subject:** Re: Letter to Mr. Book

Dear Bob :

SSAC's legal consoler is drafting the formal letter to EID now and we will forward you a copy when finished. Actually SSAC has never signed any document with EID .Therefore, we though there's no need for a formal termination but we will do it for release your concern.

Regards,

George Fung
886-9375-97862 ( C )

BobHBook@aol.com
寄件人:

電　話:

部　門:

2007/11/30 下午 08:53

收件
人　georgefung@ms.aido.com.tw

副本　chuck.freiburger@thompsonhine.com, Boyd.Moehring@thompsonhine.com,
抄送　maxlo@ms.aidc.com.tw, sonia.sun@bakernet.com, mkusumoto@sj30jet.com

收 件 者:

副本抄送:

副本密送:

主旨 Re: ??: Letter to Mr. Book

12/18/2007

Dear Max:

I just tried to reach you on your cell phone without success, so I will communicate by email. I was disappointed with the letter to Mr. Leedham. It is not a Termination Letter, but a letter in which you seek a concession and a further response, and the letter was only sent yesterday! Therefore, you are still negotiating with them. I will not have our legal team work this weekend, nor will I submit a Term Sheet today until you send a valid Termination Letter to Mr. Leedham. We are only prepared to proceed on an exclusive basis. If you are continuing to deal with others we will withdraw, and we will not permit our offer to be used to help possibly improve an offer from others.

Please advise me as soon as possible on this point, so I can determine our course of action for today. As always, I thank you for your kind understanding, and anticipated cooperation.

Sincerely,

Bob Book

Ps I can be reached on my cell 201 245 9030 or my office 201 461 2382 or by email.

_____

Check out AOL Money & Finance's list of the hottest products and top money wasters of 2007.

12/18/2007

# Exhibit 7

| | |
|---|---|
| **From:** | bobhbook@aol.com |
| **Sent:** | Tuesday, December 04, 2007 4:38 PM |
| **To:** | Wilkinson, William |
| **Subject:** | Fwd: Termination Notice |
| **Attachments:** | Termination Notice.pdf |

-----Original Message-----
From: Marshall Kusumoto <mkusumoto@sj30jet.com>
To: Howard Leedham <howard@burjholding.com>
Cc: maxlo@ms.aidc.com.tw; dlansdale@fulbright.com; Steven.Buxbaum@haynesboone.com; Hamish Harding <hharding@actionaviation.com>; georgefung@ms.aidc.com.tw; Sinko, Lois <LSinko@sj30jet.com>; davidchou@ms.aidc.com.tw; sandiehsu@ms.aidc.com.tw
Sent: Fri, 30 Nov 2007 12:10 pm
Subject: Termination Notice

Dear Mr. Leedham,

Please find the attached letter terminating relationship between SSAC and EIDC.

Respectfully yours,

Marshall Kusumoto

This e-mail and any attachments may contain confidential and privileged information. If you are not the intended recipient, please notify the sender immediately by return e-mail, delete this e-mail and destroy any copies. Any dissemination or use of this information by a person other than the intended recipient is unauthorized and may be illegal.

More new features than ever. Check out the new <u>AOL Mail</u>!

12/18/2007



29 November 2007

Mr. Howard Leedham

Emirates Global Capital (US), LLC
PO Box 62220
Dubai, United Arab Emirates

Emirates Investment & Development Company, PSC
PO Box 62220
Dubai, United Arab Emirates

Re: <u>Termination of Stock Purchase Transaction</u>

Dear Mr. Leedham:

This will serve as notice that Sino Swearingen Aircraft Corporation ("SSAC") hereby terminates negotiations with Emirates Global Capital (US), LLC, Emirates Investment & Development Company, PSC and all related entities regarding the Stock Purchase Agreement and Promissory Note contemplated by the parties. Accordingly, please destroy all documents signed by one or both parties and all confidential information provided by SSAC in anticipation of the transaction.

Thank you.

Very truly yours,

Marshall Kusomoto on behalf of
Chang-Feng ("Max") Lo
Chairman & CEO

cc:    Steve Buxbaum, Haynes & Boone
       Daryl Landsdale, Fulbright & Jaworski
       Hamish Harding, Action Aviation

# Exhibit 8



ALL-STATE® LEGAL   800-222-0510   GD™   RECYCLED

**From:**   kellysu@ms.aidc.com.tw
**Sent:**   Thursday, November 29, 2007 8:57 PM
**To:**   bobhbook@aol.com
**Cc:**   maxlo@ms.aidc.com.tw; georgefung@ms.aidc.com.tw
**Subject:**   Conference call
**Attachments:** Negotiation_Schedule_SSAC_Acquisition_Co[1]._1129 Revised.ppt

**REDACTED**

Dear Mr. Book,

Dr. Lo is in currently  in an important meeting in Taipei which will be concluded around 10:30
Taiwan time.  Is it possible to postphne the proposed conference call for a half hour to 10:30.
He will call you then.

Sincerely,
Kelly Su
Assistant to Dr. Lo

----- 轉呈者 KELLY SU/AIDC 於 2007/11/30 上午 09:44 -----

bobhbook@aol.com
寄件人:                                              收件人 maxlo@ms.aidc.com.tw

電   話:                                              副本抄送 chuck.freiburger@thompsonhine.com, Boyd.Moehring@thompsonhine.com

部   門:                                              收 件 者:

                                                     副本抄送:

2007/11/30 上午 08:29                                  副本密送:

                                                     主旨:

## CONFIDENTIAL

Dear Max:

On behalf of  and myself, I wish to express our appreciation and admiration

for your continued efforts and determination to successfully conclude a mutually acceptable transaction between SSAC and our company SSAC Acquisition.

Let me assure you in the clearest possible terms that we fully understand and appreciate the challenges you are facing. We will do our very best to work with you and your colleagues in a timely and professional manner, with the objective of successfully concluding a transaction as quickly as possible on mutually acceptable terms and conditions.

I have attached for your review the following:

- A revised Proposed Negotiation Schedule with SSAC Acquisition Corp.
- A Term Sheet (will follow over the weekend).
- A draft Stock Purchase Agreement (will follow over the weekend).

OR

- A draft Asset Purchase Agreement (will follow over the weekend).

My team and I would like to explain to you and your colleagues in detail our thinking in terms of how best to proceed to satisfy our respective objectives. Since time is so critical, I suggest we have a conference call Thursday (tonight) evening at 9:00 P.M. New York time, which is Friday morning 10:00 A.M. Taiwan time. Please let me know via email if this time slot works for you and your team. I would also encourage you to return to the states as soon as possible. I believe face to face meetings in the same time zone will be much more productive than emails and conference calls.

**REDACTED**

Listed below are the call-in instructions:

Dial In #: (866) 231-9615
International Dial In #: (713) 576-2028
Participant Code: 440995

Agenda for the Call:





SSAC Acquisition Corporation telephone conference call participants:

Mr. Robert H. Book – SSAC Acquisition Corp.

Mr. Charles Freiburger – Thompson Hine

Mr. Boyd Moehring – Thompson Hine

**REDACTED**

Sincerely,

Robert H. Book

More new features than ever. Check out the new <u>AOL Mail</u>!

# REVISED
## Proposed Negotiation Schedule with SSAC Acquisition Co.

| Items | Schedule Nov. | Dec. |
|---|---|---|
| Security Agreement Sign-off – Stock Purchase Agreement or Asset Purchase Agreement Sign-Off | | 12/8/07 ▼ |
| Bridge Loan ($5M) in SSAC | | No later than 12/8/07 ▼ |
| Due Diligence and Negotiation | | 12/12/07 ▼   12/24/07 ▼ |
| Execution of Stock Purchase Agreement or Asset Purchase Agreement | | 12/27/07 ▼ |
| Closing | | No later than 1/8/08 ▼ |

☐  Yao Hwa to expedite review of Security Agreement, Promissory Note, along with Stock Purchase Agreement or Asset Purchase Agreement.

☐  Documents to be notarized by attorney of SSAC Acquisition Co.

# Exhibit 9

From: bobhbook@aol.com
Sent: Friday, November 30, 2007 6:01 PM
To:    maxlo@ms.aidc.com.tw
Cc:    georgefung@ms.aidc.com.tw; Freiburger, Charles; Moehring, Boyd

**REDACTED**

Dear Max:

Thank you for your timely and decisive response to my concerns regarding the letter to Mr. Howard Leedham. Now that that issue is behind us I would like to move on with two critical points:



Please feel free to call me at any time over the weekend. Our Acquisition and Legal Team will be working on this all weekend to accommodate the timeline.

Warmest regards,
Bob Book

More new features than ever. Check out the new AOL Mail!

12/21/2007

# Exhibit 10

**From:** bobhhbook@aol.com
**Sent:** Monday, December 10, 2007 2:21 PM
**To:** Wilkinson, William
**Subject:** Fwd: Your Lack of Responsive Communication

-----Original Message-----
From: bobhhbook@aol.com
To: maxlo@ms.aidc.com.tw
Cc: georgefung@ms.aidc.com.tw; kellyesimmons@hotmail.com; chuck.freiburger@thompsonhine.com
Bcc: jaffe@jetraninternational.com; STRPTX@aol.com; Patrick_Robertson@rockefeller.senate.gov
Sent: Mon, 10 Dec 2007 2:04 pm
Subject: Your Lack of Responsive Communication

Dear Max:

Your lack of consistent/responsive communication is not only grossly inappropriate, it is bad faith on your part, particularly since our group has been negotiating with you and SSAC in good faith. In our view, your actions are a serious violation of your fiduciary responsibilities to the original shareholders, the SSAC employees, the vendors, the customers, the State of West Virginia, the State of Texas, and even to your shareholders in Taiwan. In all candor, since I was first introduced to SSAC approximately nine months ago, I have never seen a transaction handled so unprofessionally.

Max, I am disappointed. At the very least I expected more courtesy from you.

Sincerely,

Robert H. Book

More new features than ever. Check out the new AOL Mail!

# Exhibit 11



18 December 2007

Mr. Robert H. Book
SSAC Acquisition Corp.
1 Parker Plaza
400 Kelby St. 15 Fl
Fort Lee, NJ 07024

Dear Bob,

Please accept my apologies for the delays in responding to your latest emails. The board of directors finally had the opportunity to fairly evaluate your letter of intent and discuss the issues raised during the process. While we greatly appreciate your interest in Sino Swearingen Aircraft Corporation, and after much in-depth consideration and deliberation by those involved, I am very sorry to inform you that the board has decided not to accept your letter of intent. Accordingly, please return or destroy all confidential information currently in your possession.

Good luck with your future business endeavors.

Very truly yours,

Cheng-Fang (Max) Lo, Ph.D.
Chairman & CEO

# Exhibit 12



December 18, 2007

*Via E-Mail (howard@burjholding.com)*
*and Overnight Courier*

Howard Leedham

Emirates Global Capital (US), LLC
P.O. Box 62220
Dubai, United Arab Emirates

Emirates Investment & Development Company, PSC
P.O. Box 62220
Dubai, United Arab Emirates

c/o The Corporation Trust Company, Registered Agent
1209 Orange Street
Wilmington, Delaware  19801

RE:    SSAC Acquisition Corp./Sino Swearingen Aircraft Corporation

Dear Mr. Leedham:

This firm represents SSAC Acquisition Corp.  Sino Swearingen Aircraft Corporation ("SSAC") and SSAC Acquisition Corp. have been negotiating the specific terms of SSAC Acquisition Corp.'s acquisition of control of SSAC.

On or about November 30, 2007, SSAC granted to SSAC Acquisition Corp. the exclusive right to negotiate the terms of the acquisition of SSAC. You are hereby put on notice of SSAC Acquisition Corp.'s exclusive right to negotiate the acquisition of SSAC. Attached for your reference are copies of the correspondence between SSAC Acquisition Corp. and George Fung granting SSAC Acquisition Corp. this exclusive right, as well as a letter you should have received from SSAC on November 30, 2007, terminating negotiations with Emirates Group, which was in response to SSAC Acquisition Corp.'s demand for the exclusive right to negotiate.

We understand that you have since engaged or are currently engaged in negotiations with SSAC for the acquisition of its business. These negotiations are in violation of SSAC Acquisition Corp.'s exclusive right to negotiate with SSAC.  I

# THOMPSON HINE

therefore must demand that Emirates Group immediately cease and desist from this activity that violates my client's exclusive rights.

More specifically, please confirm to me in writing within 24 hours that Emirates Group will immediately cease negotiations with SSAC or, if an agreement has already been reached between Emirates Group and SSAC, that Emirates Group will not move forward with the closing of the transaction. If we do not receive your confirmation of compliance with these requests within 24 hours, SSAC Acquisition Corp. will pursue all available remedies to protect its rights.

We await your response.

Sincerely,

William C. Wilkinson

Enclosures

cc.    Robert H. Book (w/encl.)
       Charles F. Freiburger (w/encl.)

JS 44

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I.(a) PLAINTIFF**
SSAC ACQUISITION CORP.

**DEFENDANT**
SINO SWEARINGEN AIRCRAFT CORPORATION, EMIRATES GLOBAL CAPITAL (US), LLC and ACTION AVIATION INVESTORS, LLC

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT –
( IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Stephen E. Herrmann, Esquire
Richards, Layton & Finger
One Rodney Square, P.O. Box 551
Wilmington, DE 19899
(302) 651-7730

ATTORNEYS (IF KNOWN)

**II. BASIS OF JURISDICTION** (PLACE AN X IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government ☒ Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN 'X' IN ONE BOX
(For Diversity Cases Only) FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☒4 |
| Citizen of Another State | ☒2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)
Breach of Contract and Business Torts; Jurisdiction Pursuant to 28 U.S.C. 1332

**V. NATURE OF SUIT** (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (excl Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | | | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholder's Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | **LABOR** | **SOCIAL SECURITY** | |
| ☒ 190 Other Contract | | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus: | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Eject | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | **FEDERAL TAX SUITS** | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | | |

**VI. ORIGIN** (PLACE AN X IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:** CHECK IF THIS IS A **CLASS ACTION DEMAND**
☐ Under F.R.C.P. 23
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** (see instructions):

JUDGE _____ NUMBER _____

DATE 12/21/07
SIGNATURE OF ATTORNEY OF RECORD
FOR OFFICE USE ONLY

RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____

INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

## Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.    (a) Plaintiffs - Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved)

(c) Attorneys. Enter firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)"

**II.   Jurisdiction.** The basis of jurisdiction is set forth under Rule 8 (a), F. R. C. P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction is based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an X in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III. Residence (citizenship) of Principal Parties.** This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party

**IV.  Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate's decision.

**V.   Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV above, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive

**VI. Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause.

**VII. Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.C.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded

**VIII. Related Cases.** This section of the JS-44 is used to reference relating pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. _____ 0 7 ~ 8 4 2 ~

# ACKNOWLEDGMENT
# OF  RECEIPT  FOR AO FORM  85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF ____2____ COPIES OF AO FORM 85.

12/21/07
_____
(Date forms issued)

X _____
(Signature of Party or their Representative)

X  Stephon  Fuller
_____
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action